## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| BRENDA BAKER on behalf of herself and all Others Similarly Situated,<br><br>        Plaintiff,<br><br>v.<br><br>KIA AMERICA, INC. and<br>HYUNDAI MOTOR AMERICA<br><br>        Defendants. | Case No.<br><br><br><br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

### CLASS ACTION COMPLAINT

Plaintiff Brenda Baker ("Plaintiff") brings this action on behalf of herself individually and as a class representative on behalf of all similarly situated persons (the "Class") against Kia America, Inc. ("Kia") and Hyundai Motor America ("Hyundai") (collectively, "Defendants") and allege as follows:

### <u>INTRODUCTION</u>

1.     Defendants design, manufacture, market, distribute and sell vehicles that are shockingly easy to steal due to a serious defect with which they left the factories.  The vehicles, owned or leased by Plaintiff and members of the proposed Class, are unreasonably susceptible to theft and worth far less than Defendants caused their customers to believe, and less than consumers bargained for when they purchased or leased them.

2.     The defective vehicles ("Class Vehicles") are Kias manufactured between 2011 and 2022 and Hyundais manufactured between 2015 and 2022 that require entry by a mechanical key and which lack engine immobilizers, a basic theft prevention device that is standard in most vehicles manufactured or sold in the United States in the last twenty years, but which Defendants

have been wrongfully slow to incorporate.[1]    Indeed, according to the Highway Loss Data Institute, 96% of vehicles sold for the 2015-2019 model years had immobilizers as standard equipment. These basic devices were standard on only 26% of Hyundai and Kias for the same model years.[2]

3.    Both Defendants have effectively admitted the theft-risk problem, with Kia acknowledging, "Kia America is aware of the rise in vehicle thefts of a subset of trim level vehicles," Hyundai stating, "Hyundai Motor America is concerned with the rise in local auto thefts," and each stressing, in conjunction with these statements, that they have included engine immobilizers in all new vehicles, going forward.[3]

4.    Neither Kia nor Hyundai has offered any recall, standard free repair or compensation to the many thousands of people who bought or leased their vehicles without this basic antitheft protection.  Defendants' failure to address the problem is wholly inexcusable, particularly in light of in light what has become a nationwide onslaught of thefts.

5.    Kias and Hyundais are now by far the most likely vehicles to be stolen in many cities across the United States.  Indeed, multiple municipalities have announced they are considering suing Defendants under public nuisance laws for making vehicles that are so easy to steal.

6.    Plaintiff's vehicle was stolen in the summer of 2022 due to Defendants' failure to install immobilizers, which has caused and continues to cause significant hardship.  While

---

[1] https://www.makeuseof.com/what-is-an-immobilizer-does-my-car-have-one/ (visited November 7, 2022).

[2] https://www.abc12.com/news/business/kia-hyundai-are-easy-targets-for-thieves-insurance-data-confirms/article_f1969b2e-92e7-5be7-b2cf-b5dc7433dbeb.html (visited November 7, 2022)

[3] https://nbcpalmsprings.com/2022/09/02/tiktok-challenge-targeting-kia-hyundai-vehicles-leads-to-rise-in-car-thefts-lapd-chief-says/ (visited November 7, 2022).

her vehicle was eventually recovered, like all Class members, Plaintiff is faced with the significant risk of future theft and concomitant diminution of value.

7.     As detailed herein, Kia has violated federal law, various state statutes, and common law duties in connection with vehicles manufactured between 2011 and the present ("Kia Class Vehicles") (defined below), and Hyundai has violated the same in connection with vehicles manufactured between 2015 and the present ("Hyundai Class Vehicles") (also defined below).

8.     Plaintiff and all other members of the classes proposed herein ("Class members") are purchasers or lessors of Class Vehicles. Plaintiff brings this action on behalf of herself and all such Class members.

### JURISDICTION AND VENUE

9.     This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000, and Plaintiff and other Class members are citizens of a different state than Defendant.

10.     The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338 with respect to claims seeking declaratory and other relief arising under the Magnuson-Moss Federal Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the entire case or controversy.

11.     This Court has personal jurisdiction over Plaintiff because Plaintiff is a resident of this state and purchased and used their vehicle here.

12.     This Court has personal jurisdiction over Defendants because each of them conducts substantial business in this District, and some of the actions giving rise to the complaint took place in this District.

13.    Venue is proper in this District under 28 U.S.C. § 1391 because each Defendant, as a corporation, is deemed to reside in any judicial district in which it is subject to personal jurisdiction.  Additionally, each Defendant transacts extensive business within the District, and some of the events establishing the claims arose in this District.

## PARTIES

**Plaintiff**

### Brenda Baker

14.    Plaintiff and proposed Michigan State and National Class Representative Brenda Baker is a resident and citizen of the state of Michigan. She owns a 2017 Kia Sportage that was purchased used at Fox Kia in Grand Rapids Michigan in 2019. She chose the Kia Sportage in part because she wanted a reliable and secure vehicle.

15.    In June of 2022, Plaintiff Baker's Kia Sportage was stolen.  It was missing for two weeks before it was recovered.  As a result of the failure to install an immobilizer, the vehicle was damaged in connection with its theft, and she, like other Class members, was unable to use the vehicle while it was being repaired. Kia did not provide Plaintiff Baker with a loaner vehicle for a number of the weeks during which her vehicle was being repaired.

16.    Because Kia did not install an immobilizer in Plaintiff Baker's vehicle and Plaintiff Baker only learned this following the theft of the same, she owns a vehicle that is worth less than she was led to believe.  Defendants caused this harm by their failure to install an immobilizer in her Class vehicle.

17.    Plaintiff Baker did not receive the benefit of her bargain. She purchased a vehicle that is of a lesser, standard, grade, and quality than represented, and did not receive a vehicle that met ordinary and reasonable consumer expectations regarding reliable operation.

The lack of an immobilizer has materially diminished the intrinsic and resale value of her Class Vehicle. Plaintiff Baker's and all other Class Vehicles are stigmatized as a result of the lack of immobilizers.

18.    Had Defendants disclosed that Class Vehicles were manufactured without immobilizers, Plaintiff Baker would not have purchased her Class Vehicle, or paid less to do so.

**Defendants**

19.    Defendant Hyundai Motor America is a major automotive company which designs and manufactures Hyundai Class Vehicles and other vehicles that it advertises, promotes, sells and services them across the United States.  It is incorporated in California and headquartered at 10550 Talbert Avenue Fountain Valley, CA 92708.  It is a wholly owned subsidiary of Hyundai Motor Company, which is based in South Korea.  Hyundai Motor Company owns approximately 33% of  Kia Corporation the parent of Defendant Kia America, Inc.  Hyundai has a major design facility in Southern California.

20.    Defendant Kia America, Inc. is a major automotive company which designs and manufactures Kia Class Vehicles and other vehicles that it advertises, promotes, sells and services them across the United States. It is a California corporation that maintains its principal place of business at 111 Peters Canyon Road, Irvine, California, 92606.  Kia has a major design facility in Southern California. Kia is subsidiary of Kia Corporation, based in South Korea.  Kia Corporation is approximately 33% owned by Hyundai Motor Corporation.

21.    Defendants Hyundai and Kia often use the same platforms, power trains, and other forms of engineering.  The Class Vehicles they manufacture are identically defective due to the Defendants' identical failure to install immobilizers.

## SUBSTANTIVE ALLEGATIONS

**A.    Defendants' Opted to Omit Common Crucial Anti-Theft Measures from the Class Vehicles**

22.    During the Class Periods, Kia and Hyundai have sold at least hundreds of thousands of Class Vehicles throughout the United States without installing immobilizers, a common, standard form of anti-theft protection.  As a result, Class Vehicles have become the most frequently stolen vehicles in the in metropolises across the nation.

23.    Engine immobilizers are electronic security mechanisms that prevent engines from being turned on unless the correct key (as determined by electronic communications between a transponder on the key and a receiver in the vehicle) is present.  When a driver puts their key with an electronic transponder into the ignition, the ignition receives a signal and transmits it to a unit that controls the engine.  The unit that controls the engine then determines whether the key being used is, in fact, one that legitimately belongs with the vehicle.  If the unit determines that the correct key is not present, the engine will not start.

24.    In Class vehicles, because they lack immobilizers, theft is astonishingly easy. As described in a recent article on *Axios*, it works as follows:

> [I]t involves peeling back the steering column cover and dismantling the key slot. A USB cable can then be used to turn the ignition tumbler, start the vehicle, and release the steering lock. In turn, this allows the Hyundai or Kia to be driven away and started again at any time using the same cable. The thieves specifically target Korean vehicles with a physical key slot as push-button start models can't be bypassed as easily.
>
> Vehicles that utilize a physical key fall victim to this method because they reportedly aren't equipped with a factory-installed anti-theft device called an immobilizer. These immobilizers use a chip (called a transponder) to authenticate a key against a vehicle's ECU. This means that even if a thief has copied the physical cuts on a key, the vehicle can't be started unless the transponder has been paired with the vehicle. Because the susceptible Hyundai and Kia vehicles allegedly do not have an immobilizer, the thieves are

able to simply force the ignition cylinder as if they were using a screwdriver to perform the same trick on a car from the 1980s.[4]

25.     Because of this vulnerability, which Defendants' knowingly incorporate into the Class Vehicles, they are frequently stolen in under a minute.[5]

26.     The theft is so easy that children can do it.  Thefts of Class Vehicles rose dramatically after teenagers posted videos detailing the simple procedure on social media.  A trend has risen of minors steeling these cars and positing videos of themselves doing it, using the hashtag "Kia Boyz" or "Kia Boys."

27.     The police chief of Grand Rapids, Michigan, Eric Winstrom, has stated, "It's incredibly dangerous that these kids are out driving … ***Especially since some of them are as young as 11-year[s]- old***."[6]  As further reported by a station in West Michigan, "Police say, a lot of times, these young people are not only stealing cars, but also carrying guns. Couple that with a lack of driving skills, and you've got a recipe for something terrible to happen."[7]

28.     The same is true around the country.  For example, Major Jason Cook of the Dayton County Police Department in Ohio stated in an interview that thieves do not need advance technological knowledge to access these cars and that, "***it's not a difficult thing to do***."[8] He said the rise in thefts is due manufacturing issue that makes them especially vulnerable.  He

---

[4] https://www.thedrive.com/news/how-thieves-are-stealing-hyundais-and-kias-with-just-a-usb-cable (visited November 7, 2022).

[5] https://www.axios.com/2022/08/27/kia-hyundai-thefts-stolen-usb-immobilizer-tiktok (visited November 7, 2022).

[6] https://www.fox17online.com/news/local-news/grand-rapids/396-attempted-successful-kia-and-hyundai-thefts-in-gr-since-may-1st (visited November 7, 2022).

[7] *Id.*

[8] https://www.yahoo.com/video/dpd-gives-uptick-kia-hyundai-195636660.html?guccounter=1&guce_referrer=aHR0cHM6Ly93d3cuZ29vZ2xlLmNvbS8&guce_referrer_sig=AQAAABoy6b0gBvIO2D6d61fJNJCEHXzbxCBdkbXRFyTlv1Fjl7ap2oppNSxp342jUp0IQbe5MwAh4WM9KyznfWZzf8urKuMzvA8_CaoIbvCa3X_wUnDfILnlKWIDLqUyWpUFnWA29F89oZSQ5TJJR68ZznQInPnhl23n76TH1ZYpBlQP (visited November 7, 2022) (emphasis supplied).

also indicated that the manufacturers of these cars know about the vulnerability and he isn't aware of an easy "fix" to the problem.[9]

29.    Likewise, in an interview with CNBC, the sheriff of Cook County Illinois stated the thieves are "mainly young teens — some, not even old enough to legally drive."[10]  As he further detailed, "[the perpetrators are] ***doing it in 20 to 30 seconds***."[11]  He added "We see no end in sight."[12]  This sheriff further stated that the method of theft was "literally […]as old-fashioned as you can imagine."  *Id.*

30.    Of course, consumers shopping for vehicles do so under the reasonable belief that the vehicles they are considering have standard modern security devices and are not abnormally easy to steal using old, unsophisticated measures.  This is particularly true of vehicles, like the Class Vehicles, that are marketed to be safe and reliable.

**B.    The Class Vehicles Are Stolen with Astonishing Frequency**

31.    Due to Defendants' decision to exclude immobilizers from the Class Vehicles, the theft of them has spiraled out of control.  This is true both in Michigan and across the nation.

32.    For example, in June 2022, Hyundais and Kias represented 45% of all vehicles stolen in Grand Rapids, Michigan.[13]  The Police Chief of Grand Rapids, Eric Winstrom, stated, "[t]hey probably do make up the majority of stolen vehicles,…I mean, we're recovering them

---

[9] *Id.*

[10] https://www.cnbc.com/2022/09/08/tiktok-challenge-spurs-rise-in-thefts-of-kia-hyundai-cars.html (visited November 7, 2022).

[11] *Id.* (emphasis supplied)

[12] *Id.*

[13] https://www.motorbiscuit.com/some-u-s-cities-almost-half-car-theft-kia-hyundai/ (visited November 7, 2022).

literally every day."[14]  A July 28, 2022 report indicated that between May 1, 2022 and the end of July, there had been 396 attempted and successful thefts of Kia or Hyundai vehicles in Grand Rapids.[15]

33.     The issue is equally prevalent in other parts of Michigan.  On June 20, 2022, the Grand Rapids, Wyoming, and Kentwood Police Departments, all in Michigan, issued a joint release warning residents about the uptick in vehicle thefts, stating "The Combined Auto Theft Team is encouraging everyone to be aware of ongoing vehicle thefts, especially those with KIA and Hyundai models with a standard key ignition. These stolen vehicles are often used in other serious crimes and then abandoned."[16]

34.     In addition, as a June 2022 news report stated, "If your vehicle was stolen within Kentwood [Michigan] last month, there's a good chance it was either a Kia or a Hyundai."[17]

35.      Similarly, on August 18, 2022, it was reported that "[i]n Detroit alone, about 150 Kias and Hyundais were stolen in July. Eastpointe has had 15 stolen this month alone, Clinton Township has had 17 since mid-July, and in Roseville, seven were stolen since June 1st and 18 more attempts."[18]

---

[14] https://www.mlive.com/news/grand-rapids/2022/07/stolen-kia-hyundai-vehicles-recovered-daily-by-grand-rapids-police.html (visited November 7, 2022).

[15] https://www.fox17online.com/news/local-news/grand-rapids/396-attempted-successful-kia-and-hyundai-thefts-in-gr-since-may-1st (visited November 7, 2022).

[16] https://wgrd.com/grand-rapids-police-warn-of-car-theft-especially-if-you-drive-a-kia-or-hyundai/?utm_source=tsmclip&utm_medium=referral (visited November 7, 2022).

[17] https://www.woodtv.com/news/grand-rapids/protect-your-vehicle-from-theft-with-tips-from-police/ (visited November 7, 2022).

[18] https://www.fox2detroit.com/news/kia-boyz-southfield-dealership-has-car-stolen-another-damaged-following-new-tiktok-trend (visited November 7, 2022).

36.    As noted above, Michigan's experience with respect to these thefts is far from

unique.  The problem has been recognized nationwide.

37.    As reported by the *Detroit Bureau* on September 1, 2022:

> The problem appeared to start in Milwaukee, Wisconsin with
> groups of "Kia Boys" stealing cars and joyriding. Someone posted
> a how-to video to TikTok, and the practice began to spread, first
> across the upper Midwest, then around the country. TikTok has
> since deleted the original video, but the exploit is easy enough that
> thieves took note.
>
> … According to a NICB report, 40% of the cars stolen in the
> second half of July in St. Petersburg [Florida] were Kias and
> Hyundais.[19]

38.    Multiple cities have announced their consideration of suing Defendants over the

defective Class Vehicles.  The city of Milwaukee announced in December 2021 that it was

considering suing Defendants under public nuisance laws.[20]  Kias and Hyundais at that time

accounted for more than two thirds of the vehicles stolen in Milwaukee.[21]

39.    The city's letter stated:

> We write to ask that KIA Motors America Inc., make fundamental
> changes to the mechanisms used to secure its vehicles …. We do
> this not only in the interest of protecting the property and persons
> of those who purchase your vehicles, but to try and do something
> to lessen the drain on police and other resources that seems directly
> attributable to certain defects in their locking system."

40.    In St. Louis, similarly, the city council announced that it was considering suing

Defendants  unless  they  made  adequate  progress  to  "mitigate  the  public  nuisance  that

---

[19] https://www.thedetroitbureau.com/2022/09/kia-hyundai-soar-to-top-of-most-stolen-list-courtesy-of-
tiktok/ (visited November 7, 2022).

[20] https://www.wisn.com/article/milwaukee-considers-suing-two-automakers-over-stolen-cars/38444595#
(visited November 7, 2022).

[21] https://urbanmilwaukee.com/2022/08/17/kia-hyundai-thefts-now-national-
problem/#:~:text=By%202021%2C%20more%20than%20two,Now%20Chicago%20is%20catching%20u
p. (visited November 7, 2022).

[Defendants have created]."[22]   In August 2022, in a letter to Defendants in which St. Louis City Counselor Sheena Hamilton, the city's top legal officer, informed Defendants that St. Louis Police have reported more than 1,500 thefts or attempted thefts of Kia and Hyundai vehicles in just this year, including 356 thefts or attempted thefts in the first 13 days of August, which accounts for nearly 77% of all vehicles stolen over that timeframe.[23]  The letter stated:

> The City demands that Kia and Hyundai mitigate the defective conditions providing thieves … the instrumentality by which they are destroying property, endangering city drivers and themselves, and in some cases committing violent felonies.[24]

41.    By September 1, 2022, that number of thefts in St. Louis had gone up to 1,972.[25]

42.     Defendants could have prevented all of this of this by the obvious measure of installing immobilizers in the Class Vehicles.  Instead, apparently as a cost saving measure, Defendants chose not to do so.  Now, they stand by while thefts of vehicles they designed, manufactured, distributed and sold spiral out of control.

**C.    Owners and Lessees of Class Vehicles Have Been Significantly Harmed**

43.    Plaintiff and all others who purchased or leased Class Vehicles have been and continue to be harmed in numerous ways by Defendants' now highly-publicized failure to installing immobilizers.

---

[22] https://www.carscoops.com/2022/10/st-louis-wants-to-sue-hyundai-and-kia-for-causing-a-public-safety-crisis-after-massive-surge-in-thefts/ (visited November 7, 2022).

[23] https://fox2now.com/news/missouri/city-of-st-louis-threatens-kia-hyundai-with-lawsuit-over-car-thefts/ (visited November 7, 2022).

[24] *Id*., at attached letter from City Counselor Sheena Hamilton to Kia and Hyundai.

[25] https://www.ksdk.com/article/news/local/hyundai-kia-thefts-hit-insurance-appraisal-industry/63-24673a34-d557-452c-9fce-f10d6ce94c02 (visited November 7, 2022).

44.    First, Class members' cars are simply not as valuable as they had been led to believe.  A car that is at high risk of being stolen is worth less vehicle that is as secure as is normal and expected in the industry.

45.    Also, consumers of Class Vehicles have reported that their insurance rates are rising.[26]  The Vice President of media relations at the Insurance Information Institute explained, "if a company has seen a lot of losses by customers who own a vehicle that is prone to being stolen for parts, etc., then that could result in higher premiums," and added, "We already see that with certain car models that are stolen most frequently."[27]  Indeed, it has been reported that at least one major insurer, Progressive, will not insure the Class Vehicles because they are too easy to steal.[28]

46.    Owners are also unable to resell their Class Vehicles at market value because the thefts are driving down demand.  As one appraiser explained, owners are "going to be in for a loss of market value due to these vehicles constantly being stolen."[29]  Defendants have caused this obvious and easily preventable financial harm to their customers.

47.    In addition, Class members have been advised by police departments to take burdensome, intrusive and expensive steps including:

- "Park[ing] in well-lit areas

- Install[ing] an audible alarm system and anti-theft device

---

[26] https://www.news5cleveland.com/news/local-news/hundreds-of-ohioans-sign-onto-class-action-against-for-hyundai-and-kia-thefts (visited November 7, 2022).

[27] https://www.cleveland.com/news/2022/10/own-a-kia-or-hyundai-heres-why-your-insurance-rates-could-go-up.html

[28] https://www.theautopian.com/progressive-reportedly-wont-insure-some-kias-and-hyundais-because-theyre-too-easy-to-steal/ (visited November 7, 2022).

[29] https://www.ksdk.com/article/news/local/hyundai-kia-thefts-hit-insurance-appraisal-industry/63-24673a34-d557-452c-9fce-f10d6ce94c02 (visited November 7, 2022).

- Install[ing] a vehicle immobilizer system; [and]

- Install[ing] a tracking system"[30]

48.     Being told to restrict where one parks because one's vehicle so much more likely than others to be stolen is not a restriction that consumers choosing cars should be expected to anticipate and bargain around.  Neither is being told that to protect their vehicles they must purchase add on devices that are either unattractive, expensive or both.

49.     In addition, of course, if Class members' cars are stolen as Plaintiff's was, they suffer the harm of not having access to the car that they purchased, the high stress of dealing with the crime and the time consuming burden of assisting police.

50.     However, as detailed above, even if Class members' individual cars are not stolen, however, they face a mountain of unfair burdens and risks relating to these vehicles.  All of that arises from Defendants' wrongful decision to omit basic anti-theft measures from the Class Vehicles.

### D.     Defendants Knew About the Importance of Immobilizers and Could and Should Have Installed Them

51.     It is beyond question that Defendants knew of the importance of immobilizers and had the capacity to install them in the Class Vehicles.  Defendants chose not to do so despite a Federal Motor Vehicle Safety Standard addressing the issue of theft prevention standards. Significantly, Defendants do put immobilizers in the vehicles that they sell in many other countries, but chose to omit them in the United States.

52.     The National Highway Transportation Safety Administration promulgated a standard, Federal Motor Vehicle Safety Standard ("FMVSS") 114, which provides that: "Each

---

[30] https://www.miamiherald.com/news/nation-world/national/article265048319.html#storylink=cpy
(visited November 7, 2022).

vehicle must have a starting system which, whenever the key is removed from the starting system prevents: (a) [t]he normal activation of the vehicle's engine or motor; and (b) Either steering, or forward self mobility of the vehicle, or both."

53.     The Class Vehicles sold in the United States were designed to be so easily stolen that do not meet this clear standard.  Had immobilizers been installed they would have met it.

54.     In addition, immobilizers have been mandatory in all new cars sold in many other countries where Defendants sell vehicles for decades.  Germany has required immobilizers since January 1, 1998, the United Kingdom since October 1, 1998, Finland since 1998, Australia since 2001 and Canada since 2007.

55.     Defendants sell versions of the Class Vehicles in those countries.  ***Defendants have had to include immobilizers in the vehicles they sell in those countries since those dates and they have done so***.

56.     Indeed, Defendants are so aware of the role that their decision to omit immobilizers from U.S. vehicles has played in the high frequency thefts that, when German consumers expressed concern about the risk of similar thefts, a Kia Germany spokeswoman reassured them with the following statement.  "Since January 1, 1998, all new vehicles registered in Germany must be equipped with an anti-static device (§ 38aStVZO), ***which prevents the type of unauthorized access referred to in the [thefts of the U.S. cars at issue in the social media] 'Challenge'.***"[31]

57.     It is not permissible for Defendants to choose sell vehicles to their U.S. customers that are extraordinarily and unnecessarily susceptible to theft.

---

[31] https://sasatimes.com/theft-problem-at-hyundai-kia-in-the-us-car-theft-as-a-tiktok-challenge/ (visited November 7, 2022) (emphasis supplied).

**E.    Defendants Still Have Not Offered an Appropriate Classwide Free Remedy to Fix These Vehicles**

58.    Despite the widespread harm that their decision to not include immobilizers in the Class Vehicles, Defendants have not offered any Classwide relief.  They have not offered all owners of the defective vehicles repairs, installation of immobilizers, and compensation for the decreased worth of their cars, or any other method of restitution.

59.    As of October 1, 2022, Hyundai has offered a new security kit, which Hyundai has described as a "glass break sensor security kit that targets the method of entry used by thieves to break into these vehicles."  It includes a kill switch and an alarm.

60.    Rather than covering the cost of fixing the harm that it has caused to its customers, Hyundai is charging $170 for these kits. Hyundai owners are also expected to have to pay for installation, which can cost up to $500.[32]

61.    Kia has not announced the upcoming availability of a similar security kit.[33] However, Kia is offering free steering wheel locks in certain localities.  This program is not adequate to address the wrong.  First, it does not appear to be available to all owners of the theft-prone vehicles.  Moreover, a steering-wheel lock does not eliminate the diminishment in value of any vehicle.  A driver is less likely to select, and would not pay as much for, a vehicle that he must secure with an inconvenient and inelegant steering wheel lock as they would for a normal vehicle that was appropriately secure upon parking.

62.    Defendants should remedy the harm they have caused.  They should not be permitted to require Class members to pay to fix the defect that Defendants knowingly

---

[32] https://www.caranddriver.com/news/a41477937/hyundai-security-kit-easy-to-steal-models/ (visited November 7, 2022).

[33] https://www.axios.com/2022/08/27/kia-hyundai-thefts-stolen-usb-immobilizer-tiktok (visited November 7, 2022).

incorporated into their vehicles.  They should also compensate Class members for the harm they have caused.  Instead, they are still causing Class members to suffer.

## CLASS ACTION ALLEGATIONS

63.    Plaintiff brings this action pursuant to Rules 23(a), (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Classes:

- All persons and entities that purchased or leased Class Vehicles[34] in the United States (the "Nationwide Class").

- All persons and entities that purchased or leased Class Vehicles in the State of Michigan (the "Michigan State Class").

64.    Together, unless otherwise indicated, the Nationwide, and Michigan State Classes shall be collectively referred to hereinafter as the "Class."  The Class excludes Defendants and their officers, directors, legal representatives, successors and assigns. The Class also excludes any entity in which either Defendant has or had a controlling interest, and its officers, directors, legal representatives, successors and assigns.

65.    The Class is so numerous that joinder of all members is impracticable.

66.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

67.    Plaintiff's claims are typical of the claims of the Class. As alleged herein, Plaintiff and members of the Class all sustained damages arising out of the Defendants' same course of unlawful conduct.

68.    There are many significant questions of law and fact common to the Class, including but not limited to:

---

[34] Class Vehicles are 2011-2022 Kia vehicles or 2015-2022 Hyundai vehicles equipped with traditional key entry systems that lack immobilizers.

- Whether Defendants had knowledge of that the lack of immobilizers caused the Class Vehicles to be defective because they are extraordinarily susceptible to theft;

- Whether Defendants concealed defects affecting the Class Vehicles;

- Whether Defendants misrepresented the safety of the Class Vehicles;

- Whether Defendants misrepresented the reliability of the Class Vehicles;

- Whether Defendants' misrepresentations and omissions regarding the safety and/or quality of its vehicles were likely to deceive a reasonable person;

- Whether a reasonable customer would pay less for a car that was at high risk of being stolen due to the lack of an immobilizer;

- Whether a reasonable customer would pay less for a vehicle that did not conform to Defendants' assurances of quality;

- Whether Defendants breached any applicable express warranties;

- Whether Defendants breached their implied warranties;

- Whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted; and

- Whether injunctive relief enjoining the reoccurrence of Defendants' conduct and/or declaratory relief that such conduct is unlawful, is warranted.

69.    The interest of Class members in individually controlling the prosecution of separate actions is theoretical and not practical. The members of the Class have a high degree of similarity and are cohesive.  Plaintiff anticipates no difficulty in the management of this matter as a class action.

70.    Class action status is also warranted under Federal Rules of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to

the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

71.     Class action status is also warranted under Federal Rules of Civil Procedure 23(b)(3) because questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## TOLLING OF STATUTES OF LIMITATION

### A.    Discovery Rule Tolling

72.     Any applicable statute(s) of limitations has been tolled by Defendants' knowing and active concealment of the facts alleged herein.

73.     To the extent that Plaintiff or other members of the Classes bring any claim outside an applicable statute of limitations, they could not have discovered through the exercise of reasonable diligence that their Class Vehicles were defective within the time period for the applicable statutes of limitation.  Indeed, Plaintiff and members of the Classes could not have reasonably discovered the true nature of the defect caused by the lack of immobilizers in their Class Vehicles until shortly before this class action litigation was commenced.

### B.    Fraudulent Concealment Tolling

74.     At all relevant times, Defendants affirmatively concealed from Plaintiff and other members of the Classes the defects in the Class Vehicles.  Defendants withheld from Plaintiff and other members of the Class information essential to the pursuit of their claims and, as a direct consequence, Plaintiff and other members of the Classes could not have discovered the defects upon the exercise of reasonable diligence.

75.     As set forth below, Defendants were aware of the design defect in the vehicles lacking immobilizers from the moment they started manufacturing those vehicles (2011 and 2015 for Kia and Hyundai respectively).  Despite such knowledge continued to manufacture, market, advertise, sell, lease and warrant such vehicles without disclosing the defects to Plaintiff and other members of the Classes.

76.     The running of all applicable statutes of limitation have been suspended with respect to any claims that Plaintiff and other members of the Classes have in connection with the defects in their Class Vehicles, pursuant to the fraudulent concealment doctrine.

**C.     Estoppel**

77.     Defendants had a continuous duty to disclose to Plaintiff and members of the Classes true character, quality and nature of the Class Vehicles, that this defect is based on a poor design and/or substandard materials, and that it will require repairs, poses a safety concern, and diminishes the resale value of the Class Vehicles.

78.     Defendants knowingly, affirmatively and consciously concealed the true nature, quality and character of the Class Vehicles from consumers.

79.     As a result, Defendants are estopped from relying on any and all statutes of limitation in defense of this action.

**CHOICE OF LAW ALLEGATIONS**

80.     As this action is brought in Michigan it is governed by Michigan's choice of law rules, which focus on which jurisdiction has the most significant relationship to the transaction and the parties.  Here, both Defendants have headquarters and major design facilities in California.  As such, on information and belief, a significant portion of the harm done in this case, including the decision to not include immobilizers in the Class Vehicles

19

occurred in California.   The application of California law thus would be fair and appropriate.

81.    Plaintiff brings claims on behalf of the Nationwide Class applying Federal law, law that is common among the states, or California law and/or, where indicated, Plaintiff brings claims on behalf of a Michigan Class based on Michigan law.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### VIOLATIONS OF MAGNUSON-MOSS FEDERAL WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.*
### (On Behalf of Plaintiff and the Nationwide Class, and,
### in the Alternative the Michigan Class)

82.    Plaintiff and the Class incorporate by reference paragraphs 1 through 80 as though fully set forth fully herein.

83.    This claim is brought on behalf of the Nationwide Class or, in the alternative, the Michigan Class (cumulatively, the "Class" for purposes of this Count).

84.    This Court has jurisdiction to decide claims brought under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* (the "Act"), by virtue of 28 U.S.C. §§ 1332 (a)-(d).

85.    The Class Vehicles constitute "consumer products," as defined in 15 U.S.C. § 2301.

86.    Plaintiff and the other members of the Class are "consumers," as defined in 15 U.S.C. § 2301.

87.    Defendants are "suppliers" and a "warrantors" of the Class Vehicles as defined in 15 U.S.C. § 2301.

88.    The Class Vehicles are "consumer products" within the meaning of the Act, pursuant to 15 U.S.C. § 2301(1).

89.    Defendants supplied a "written warranty" regarding the Class Vehicles, as defined in 15 U.S.C. § 2301(6).

90.    As suppliers and in connection with the sale of the Class Vehicles, Defendants made "implied warranties" arising under State law regarding the Class Vehicles, as defined in 15 U.S.C. § 2301(7).

91.    The Class Vehicles are defective because they were not designed to include engine immobilizers, which makes them extraordinarily and unreasonably susceptible to theft. Defendants have announced that they are concerned about theft and are including immobilizers in their vehicles from 2022 forward, thus effectively admitting that the vehicles lacking immobilizers are defective.

92.    As more fully described above, Defendants breached their express and implied warranties to Plaintiff and the members of the Class by, among other things: selling and/or leasing the Class Vehicles in an unmerchantable condition; selling and/or leasing the Class Vehicles when they were not fit for the ordinary purposes for which vehicles are purchased, which include being available when needed, which they are not when they are unusually subject to theft, and which were not fully operational or reliable; and by not repairing or curing defects and nonconformities in the Class Vehicles as they were identified.

93.    Plaintiff and each member of the Class had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants and each member of the Class.  Privity, however, is not required here in any event for numerous reasons.  First, Plaintiff and each member of the Class are intended third-party beneficiaries of contracts between Defendants and its dealers, and specifically, they are intended beneficiaries of Defendants' express and implied warranties.  The dealers were not

intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Additionally, privity is not required because the Class Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities. Finally, as to the Michigan class, Michigan does not require privity for implied warranty claims.

94.     Requiring an informal dispute settlement procedure or affording Defendants a reasonable opportunity to cure its breach of warranties would be unnecessary and futile. At the time of sale or lease of each the Class Vehicles, Defendants knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement – under the Act or otherwise – that Plaintiff and Class members resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

95.     Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the claims under the Act, whether premised upon express or implied warranty, is procedurally and substantively unconscionable under federal law and the applicable state common law.

96.     Based on the facts alleged herein, any durational limitation to the warranties that would otherwise bar the claims in this Count is tolled under equitable doctrines. Plaintiff and the other Class members sustained injuries and damages as a proximate result of

Defendants' violation of their written and/or implied warranties and are entitled to legal and equitable relief against Defendants, including economic damages, rescission or other relief as appropriate.

97.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

98.    Plaintiff, on behalf of herself and each member of the Class, seek all damages permitted by law, including diminution in value of their Class Vehicles, in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### NEGLIGENCE
**(On behalf of Plaintiff and the Nationwide Class,
or, in the Alternative, the Michigan Class)**

99.    Plaintiff and the Class incorporate by reference paragraphs 1 through 80 as though fully set forth fully herein.

100.    Defendants negligently designed and/or manufactured the Class Vehicles without including adequate theft protection, such as immobilizers, therein.

101.    Defendants owed Plaintiff and the other Class members the duty to design and manufacture the Class Vehicles in such a way as to include modern standard security measures and ensure that they were not at extreme and unnecessary risk of being stolen.

102.    Discovery will reveal additional information from Defendants regarding the design and manufacturing process to support the conclusion that the determination not to include immobilizers in the Class Vehicles constitutes negligence and/or negligent design.

103.    As a direct and proximate result of Defendants' negligence, Plaintiff and the other Class members have sustained damages.

**THIRD CLAIM FOR RELIEF**
**FRAUDULENT CONCEALMENT**
**(On behalf of Plaintiff and the Nationwide Class)**

104.    Plaintiff and the Class incorporate by reference paragraphs 1 through 80 as though fully set forth fully herein.

105.    This claim is brought on behalf of the Nationwide Class (the "Class" for purposes of this Count).

106.    Defendants concealed material facts about the defect in the vehicles lacking immobilizers of the Class Vehicles and the safety and reliability risks posed thereby.

107.    Defendants had a duty to disclose these safety, quality, dependability, and reliability issues because Defendants consistently marketed the Class Vehicles as safe and reliable.

108.    For example, Kia's brochures routinely stated during the class period that their warranty was a "testament to [the vehicles'] outstanding quality and reliability."[35]

109.    Once Defendants made representations to the public about the safety, quality, dependability and reliability of the Class Vehicles, Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts that materially qualify those facts stated. A manufacturer that volunteers information about its product must be truthful, and the telling of a half-truth calculated to deceive is fraud.

110.    In addition, Defendants had a duty to disclose omitted facts with respect to fact that the lack of immobilizers was a defect in the Class Vehicles because they were known and/or accessible only to Defendants, which has superior knowledge and exclusive access to

---

[35] *See*, *e.g.* https://cdn.dealereprocess.org/cdn/brochures/kia/2017-sportage.pdf

the facts, and Defendants knew they were not known to or discoverable by Plaintiff and the other Class members.

111. These omitted facts were material. That a defect existed in the vehicles making them shockingly susceptible to theft is a material fact to consumers.

112. Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and the other Class members to purchase Class Vehicles at a higher price for the Class Vehicles, which did not match Class Vehicles' true value.

113. Plaintiff and the other members of the Class reasonably relied on Defendants' representations in its marketing that the Class Vehicles were safe and reliable, and would not have purchased or leased the Class Vehicles had they known of the security defect caused by Defendants' failure to install immobilizers, or would not have paid as much as they did.

114. As a result of the concealment and/or suppression of the facts, Plaintiff and the other members of the Class sustained damages. For those Class members who elect to affirm the sale, damages include the difference between the actual value of that for which Class members paid and the actual value of what they received, together with additional damages arising from the sales transaction. Those Class members who want to rescind their purchase are entitled to restitution and consequential damages.

115. Defendants' acts were done maliciously, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the other Class members' rights and well-being, and to enrich itself. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future.

**FOURTH CLAIM FOR RELIEF**
**BREACH OF EXPRESS WARRANTY UNDER CALIFORNIA LAW**
**(On Behalf of Plaintiff and the Nationwide Class)**

116.    Plaintiff and the Class incorporate by reference paragraphs 1 through 80 as though fully set forth fully herein.

117.    This claim is brought on behalf of the Nationwide (the "Class" for purposes of this Count).

118.    Defendants are "merchants" and the Class Vehicles are "goods" as defined in California's Uniform Commercial Code governing the implied warranty of merchantability. Cal. U. Com. Code §§ 2104, 2105 and Uniform Commercial Code 2-104, 2-105.

119.    Defendants made express warranties under Cal. U. Com. Code 2313 and U.C.C. § 2-313.

120.    In the course of selling the Class Vehicles, upon information and belief, Defendants represented that the Class Vehicles were designed appropriately, of high quality, met federal standards, and would function properly for the purpose they were sold.

121.    Indeed, *inter alia*, the warranties for Kias from 2011 from 2022, state, as their first sentence after the table of contents, "The latest engineering techniques have been incorporated into the design and production of your Kia Vehicle."[36]  This is false, given that the design omitted security measures that are standard in modern vehicles and instead included only security measures that had been easily defeatable decades before.

122.    Defendants' affirmations and promises were part of the basis of the bargain between Defendants, on the one hand, and Plaintiff and the other Class members, on the other.

---

[36] *See, e.g.*, https://pictures.dealer.com/kia/b15372270a0e0acc7015879c5b4a77d3.pdf (2011 Warranty) at 2 (visited 11/7/22); https://pictures.dealer.com/kia/d1adfc860a0e09a70e0f8f6c735e00df.pdf (2022 Warranty) at 2

123.    Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to their express warranties.

124.    Furthermore, the limited warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiff and the other Class members whole.

125.    Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

126.    Moreover, at the time that Defendants warranted and sold the Class Vehicles, it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Class Vehicles.

127.    Plaintiff and the other Class members were induced to purchase the Class Vehicles under false and/or fraudulent pretenses and without the benefit of full disclosure of the problems described herein.

128.    At all times that Defendants warranted and sold the Class Vehicles, they knew or should have known that their warranties were false, and yet they did not disclose the truth in a timely manner, or stop manufacturing or selling the Class Vehicles without immobilizers. Moreover, Defendants have also been provided notice of their breaches of warranty through nationwide news coverage and through numerous complaints filed against including this one, and have refused to offer appropriate repairs for free. As such, it is not required, and would be futile, for Plaintiff to provide Defendants further opportunity to cure their breach.

129.    Any purported limitation on Defendants' express warranty is unconscionable and unenforceable because it was Defendants' wrongful decision that caused the harm and further as Defendants knowingly sold defective and defectively designed vehicles that did not comply with their warranties without disclosing that fact to Class Members.

130.    As a direct and proximate result of the breach of express warranties, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

<strong>FIFTH CLAIM FOR RELIEF<br>BREACH OF IMPLIED WARRANTY UNDER CALIFORNIA LAW<br>(On Behalf of Plaintiff and the Nationwide Class)</strong>

131.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 to 80 as if fully set forth herein.

132.    This Count is brought on behalf of Plaintiff and the Nationwide Class ("Class" for the purposes of this Count).

133.    Defendants are both incorporated in California and at all relevant times have been headquartered in California.  Each of them has its major U.S. design facility in that state.  On information and belief, significant decisions about the design (including the omission of immobilizers) marketing, and sale of the vehicles, and about how Defendants would respond to the theft crises were made from Defendants' California campuses.

134.    Defendants are, and at all relevant times were, merchants engaged in the business of manufacturing and distributing, among other things, the Class Vehicles.

135.    Plaintiff and the Class Members purchased the Class Vehicles.

136.    Defendants are manufacturers and merchants with respect to goods of this kind, which were sold to Plaintiff and other consumers, and there was in the sale to Plaintiff and other

consumers an implied warranty that those goods were merchantable and that they were fit for their intended use as safe and reliable vehicles for transportation.

137.    Plaintiff and Class members relied on that warranty to their detriment.

138.    However, Defendants breached that warranty implied in the contract for the sale of goods in that the Class Vehicles are not safe, reliable or fit for their intended purpose, as set forth in detail herein above.

139.    The Class Vehicles are defective and not fit for the ordinary purpose for which they were sold because they were distributed to the public without adequate theft prevention, i.e., immobilizers, which constitutes a defect, and because the defect was substantially likely to cause harm during the customary and intended use of the Class Vehicles.  As a result, the Class Vehicles were not of a quality accepted as standard in the industry and would not pass without objection in the trade under the contract description of vehicle.

140.    Plaintiff's and each Class member's interactions with Defendants suffice to create privity of contract between Plaintiff and all other members of the Class, on the one hand, and Defendants, on the other hand.  Moreover, privity of contract need not be established nor is it required because Plaintiff and the absent Class members are intended third-party beneficiaries of contracts between Defendants and their resellers, authorized dealers, and, specifically, of Defendants' implied warranties.

141.    As a direct and proximate result of this breach of warranty by Defendants, Plaintiff and other consumers have been damaged by paying monies for products that are completely unusable and unfit for their intended purpose – providing reliable transportation – because vehicles are not reliable when they are under constant risk of being stolen.  Plaintiff seeks damages in an amount to be proven at trial for the injuries suffered from Defendants'

breach of the implied warranties.  The damages suffered by Plaintiff and the Class Members include, but are not limited to, the monies paid to Defendants for the Class Vehicles.

142.    At all times that Defendants warranted and sold the Class Vehicles, they knew or should have known that their warranties were false, and yet they did not disclose the truth in a timely manner, or stop manufacturing or selling the Class Vehicles without immobilizers. Moreover, Defendants have also been provided notice of their breaches of warranty through nationwide news coverage and through numerous complaints filed against including this one, and have refused to offer appropriate repairs for free. As such, it is not required, and would be futile, for Plaintiff to provide Defendants further opportunity to cure their breach.

143.    As a result of Defendants' conduct, Plaintiff and members of the Class did not receive goods as impliedly warranted by Defendants to be merchantable.

<u>**SIXTH CLAIM FOR RELIEF**</u>
<u>**BREACH OF EXPRESS WARRANTY, MICHIGAN LAW, M.C.L. § 440.2313, *et seq.***</u>
**(On Behalf of Plaintiff and the Michigan State Class)**

144.    Plaintiff and the Class incorporate by reference paragraphs 1 through 80 as though fully set forth fully herein.

145.    This claim is brought on behalf of the Michigan State Class (the "Class" for purposes of this Count).

146.    Defendants were, at all relevant times, merchants with respect to motor vehicles.

147.    In the course of selling the Class Vehicles, upon information and belief, Defendants represented that the Class Vehicles were designed appropriately, of high quality, met federal standards, and would function properly for the purpose they were sold.

148.    Indeed, *inter alia*, the warranties for Kias from 2011 from 2022, state, as their first sentence after the table of contents, "The latest engineering techniques have been

incorporated into the design and production of your Kia Vehicle."[37]  This is false, given that the design omitted security measures that are standard in modern vehicles and instead included only security measures that had been easily defeatable decades before.

149.    Defendants' affirmations and promises were part of the basis of the bargain between Defendants, on the one hand, and Plaintiff and the other Class members, on the other.

150.    Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to their express warranties.

151.    Furthermore, the limited warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make the Plaintiff and the other Class members whole.

152.    Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

153.    Moreover, at the time that Defendants warranted and sold the Class Vehicles, it knew that the Class Vehicles did not conform to the warranties and were inherently defective, and wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Class Vehicles.

154.    Plaintiff and the other Class members were induced to purchase the Class Vehicles under false and/or fraudulent pretenses and without the benefit of full disclosure of the problems described herein.

---

[37] *See, e.g.*, https://pictures.dealer.com/kia/b15372270a0e0acc7015879c5b4a77d3.pdf (2011 Warranty) at 2 (visited 11/7/22); https://pictures.dealer.com/kia/d1adfc860a0e09a70e0f8f6c735e00df.pdf (2022 Warranty) at 2

155.    At all times that Defendants warranted and sold the Class Vehicles, they knew or should have known that their warranties were false, and yet they did not disclose the truth in a timely manner, or stop manufacturing or selling the Class Vehicles without immobilizers. Moreover, Defendants have also been provided notice of their breaches of warranty through nationwide news coverage and through numerous complaints filed against including this one, and have refused to offer appropriate repairs for free. As such, it is not required, and would be futile, for Plaintiff to provide Defendants further opportunity to cure their breach.

156.    Any purported limitation on Defendants' express warranty is unconscionable and unenforceable because it was Defendants' wrongful decision that caused the harm and further as Defendants knowingly sold defective and defectively designed vehicles that did not comply with their warranties without disclosing that fact to Class Members.

157.    As a direct and proximate result of the breach of express warranties, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

**SEVENTH CLAIM FOR RELIEF**
**BREACH OF IMPLIED WARRANTY UNDER MICHIGAN LAW**
**(On Behalf of Plaintiff and the Michigan State Class)**

158.    Plaintiff and the Class incorporate by reference paragraphs 1 through 80 as though fully set forth fully herein.

159.    Class Vehicles are "goods" within the meaning of MCL 440.2105(1).

160.    Plaintiff and the other Michigan Class members are "buyers" within the meaning of MCL 440.2103(1)(a).

161.    Defendants are "merchant[s]" within the meaning of MCL 440.2104(1) with respect to Class Vehicles.

162.    A warranty that goods shall be merchantable and fit for ordinary purposes for which such goods are used is implied in a contract for their sale if the seller is a merchant of goods of that kind.

163.    Defendants breached the implied warranty of merchantability because the Class Vehicles were not fit for the ordinary purposes for which such goods are used.  More specifically, the Class Vehicles contained defects that caused them to be unreasonably easy to steal and made them targets for thieves, Moreover, the Class Vehicles would not pass without objection in the trade under the contract description of vehicle.

164.    At all times that Defendants warranted and sold the Class Vehicles, they knew or should have known that their warranties were false, and yet they did not disclose the truth in a timely manner, or stop manufacturing or selling the Class Vehicles without immobilizers. Moreover, Defendants have also been provided notice of their breaches of warranty through nationwide news coverage and through numerous complaints filed against including this one, and have refused to offer appropriate repairs for free. As such, it is not required, and would be futile, for Plaintiff to provide Defendants further opportunity to cure their breach.

165.    Plaintiff and the other Michigan State Class members sustained injuries and damages as a proximate result of the breach in an amount to be proven at trial.

**EIGHTH CLAIM FOR RELIEF**
**VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT**
**Mich. Compl. L. Ann. §§ 445.901, *et seq*.**
**(By Plaintiff On Behalf of Herself and the Michigan State Class)**

166.    Plaintiff and the Michigan State Class incorporate by reference paragraphs 1 through 80 as though fully set forth fully herein.

167.    This claim is brought on behalf of Plaintiff and the Michigan State Class (the "Class" for purposes of this Count).

168.     The Michigan Consumer Protection Act ("MCPA") makes unlawful any unfair, unconscionable or deceptive methods, acts or practices in the conduct of trade or commerce. MCPA § 445.903(1).

169.     Defendants and Plaintiff are each "persons" within the meaning of MCPA § 445.902(d).

170.     The sale of the Class Vehicles to Plaintiff and the members of the Class occurred within the conduct of "trade or commerce" as defined by MCPA § 445.902(g).

171.     The conduct of Defendants, as set forth herein, constitutes unfair, unconscionable or deceptive methods, acts or practices in violation of the MCPA.

172.     Defendants violated the MCPA by failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.  MCPA § 445.903(s).  Defendants violated the MCPA by making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is. MCPA § 445.903(bb).  Defendants also violated the MCPA by failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.  MCPA § 445.903(cc).

173.     The acts of Defendants which constitute unfair, unconscionable or deceptive methods, acts or practices in violation of the MCPA include, but are not limited to, their manufacture and sale of the Class Vehicles, their manufacture and sale of the Class Vehicles, their failure to disclose and remedy the defect posed by Defendants' failure to install immobilizers in the Class Vehicles, and their misrepresentations and/or omissions regarding the safety and reliability of the Class Vehicles.

174.    The actions of Defendants impact the public interest because Plaintiff and the other Class members were injured in exactly the same way as thousands of others purchasing and/or leasing the Class Vehicles as a result of Defendants' generalized course of conduct.

175.    All of the wrongful acts or practices alleged herein occurred, and continues to occur, in the conduct of Defendants' business.

176.    Plaintiff and the other Class members suffered ascertainable loss as a result of Defendants' conduct.    Plaintiff and the other Class members were injured and suffered economic damages as a result of Defendants' conduct.

177.    Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and the Class Vehicles have suffered a diminution in value as a result of the conduct described herein.

178.    Defendants' conduct proximately caused the injuries to Plaintiff and the other Class members.

179.    Defendants are liable to Plaintiff and the other Class members for damages in amounts to be proven at trial.

180.    Defendants' actions as set forth above occurred in the conduct of trade or commerce.

181.    Defendants' actions impact the public interest because Plaintiff and the other members of the Class were injured in exactly the same way as millions of others purchasing and/or leasing Class Vehicles as a result of Defendants' generalized course of deception.

182.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.

183.    Plaintiff and the other Class members suffered ascertainable loss as a result of Defendants' conduct.  Plaintiff and the other members of the Class overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.

184.    Defendants' conduct proximately caused the injuries to Plaintiff and the other members of the Class.

185.    Defendants are liable to Plaintiff and the other members of the Class for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages.

**NINTH CLAIM FOR RELIEF**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW,**
**CAL. BUS. & PROF. CODE § 17200, *et seq.***
**(By Plaintiff On Behalf of Herself and the Nationwide Class)**

186.    Plaintiff and the Nationwide Class incorporate by reference paragraphs 1 through 80 as though fully set forth fully herein.

187.    This claim is brought on behalf of the Nationwide Class (the "Class" for purposes of this Count).

188.    Defendants are both incorporated in California and at all relevant times have been headquartered in California.  Each of them has its major U.S. design facility in that state.  On information and belief, significant decisions about the design (including the omission of immobilizers) marketing, and sale of the vehicles, and about how Defendants would respond to the theft crises were made from Defendants' California campuses.

189.    Plaintiff and the Class assert this claim for violations of California's Unfair Competition Law ("UCL"), Business & Professional Code §§ 17200, *et seq.*

190.    California Business and Professions Code § 17200 prohibits any unlawful, unfair, or fraudulent business act or practices.

36

191.    Defendants violated the unlawful prong of § 17200 by its violations of law, as set forth above.

192.    Defendants violated the unfair and fraudulent prong of § 17200 because, in omitting to inform vehicle owners and lessees, as well as NHTSA about a defect affecting the safety and reliability of its vehicles, they engaged in conduct that was likely to deceive reasonable consumer, owners and purchaser into believing that the Class Vehicles were safe and reliable. Furthermore, Defendants misrepresented and/or omitted to state material facts regarding the quality, safety and reliability of the Class Vehicles.

193.    Defendants also violated the unfair and fraudulent prong of § 17200 because the acts and practices set forth in this Complaint offend established public policy, as the harm caused to consumers and the general public greatly outweighs any benefits associated with those practices.

194.    Plaintiff and the other members of the Class reasonably relied on and Defendants' statements in its marketing and advertising that the Class Vehicles were safe and reliable, and would not have purchased or leased the Class Vehicles had they known of the defect created by the lack of installation of immobilizers, or would not have paid as much as they did.

195.    Plaintiff and the members of the Class have suffered injuries, including the loss of money or property, because of Defendants' unfair, unlawful and/or deceptive practices. Defendants failed to inform owners, purchasers, consumers and NHTSA, that the Class Vehicles were inherently dangerous because they had the defect posed by Defendants' failure to install immobilizers, rendering them particularly susceptible to theft.

196.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business.  Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated in California and nationwide.

197.    Plaintiff requests that this Court enter such orders or judgments as may be necessary, including a declaratory judgment that Defendants have violated the UCL; an order enjoining Defendants from continuing its unfair, unlawful, and/or deceptive practices; an order and judgment restoring to Class members any money lost as the result of Defendants' unfair, unlawful and deceptive trade practices, including restitution and disgorgement of any profits GM received as a result of its unfair, unlawful and/or deceptive practices, as provided in California Business & Professional Code § 17203, California Code of Civil Procedure § 384, and California Civil Code § 3345.

### TENTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT
**(By Plaintiff on Behalf Herself and the Nationwide Class)**

198.    Plaintiff restates and realleges paragraphs 1 through 80 as if fully set forth herein.

199.    Plaintiff brings this cause of action on behalf of herself and the members of the Nationwide Class.

200.    As more fully set forth above, Defendants had knowledge that the Class Vehicles were defective due to the lack of immobilizers, rendering them unreasonably susceptible to theft, and failed to disclose the defects to Plaintiff and the other members of the Class.

201.    As a result of their wrongful acts and/or omissions, Defendants charged a price for the Class Vehicles higher than their true value and wrongfully obtained monies that belong to Plaintiff and each member of Class.

202.     Defendants obtained and enjoyed a benefit from Plaintiff and each member of the Class, whom, to their detriment, paid a higher price for the Class Vehicles than they would have if their true value was disclosed.  Plaintiff and the other members of the Class did not gratuitously confer such a benefit to Defendants and it would be inequitable and unjust for Defendants to retain any wrongfully obtained profits.

203.     Plaintiff and each of the Class members are entitled to restitution in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually, and on behalf of the other members of the Nationwide and Michigan Classes she seeks to represent, respectfully requests that the Court enter judgment in their favor and against Defendants as follows:

A.     Declaring that this action is a proper class action and certifying the Nationwide and Statewide Classes requested herein, designating Plaintiff as the Nationwide and Michigan Class Representative, and appointing Plaintiff's attorneys as Class Counsel;

B.     Enjoining Defendants from continuing the unfair or deceptive acts or practices alleged in this Complaint and requiring Defendants to repair the Class Vehicles;

C.     Ordering Defendants to pay actual, compensatory and statutory damages to Plaintiff and the other members of the Nationwide and Michigan Classes;

D.     Alternatively, if elected, ordering Defendants to install immobilizers in the Class Vehicles or provide comparable vehicles that have immobilizers;

E.     Ordering Defendants to pay punitive damages to Plaintiff and the other members of the Nationwide and Michigan Classes;

F.    Ordering Defendants to pay pre- and post-judgment interest on any amounts awarded;

G.    Ordering Defendants to pay the costs of suit, including Plaintiff's and the other Class members' reasonable attorneys' fees; and

H.    Granting such other and further equitable relief as this Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff prays for a jury trial on all triable issues and in all proceedings so triable.

DATED: December 29, 2022                Respectfully submitted,

By:  /s/ Carl V. Malmstrom
CARL V. MALMSTROM
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLC**
111 West Jackson Blvd, Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
Facsimile: (212) 686-0114
malmstrom@whafh.com

MALCOLM BROWN
KATE McGUIRE
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
270 Madison Ave.
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
brown@whafh.com
mcguire@whafh.com

*Attorneys for Plaintiff*